# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# DOTHAN DIVISION

| | |
|---|---|
| DEBORAH LINTON, | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) CASE NO.: |
| | ) |
| AMERICA'S THRIFT STORES OF ALABAMA, INC., | ) PLAINTIFF DEMANDS TRIAL BY STRUCK JURY |
| DEFENDANT(S). | ) |

## COMPLAINT

COMES NOW, the Plaintiff, Deborah Linton ("Plaintiff" or "Linton"), and files this Complaint to be answered by the Defendant pursuant to the Federal Rules of Civil Procedure.

## I. JURISDICTION

1. This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3. This suit is authorized an instituted under the Family Medical Leave Act.

4.      This suit is authorized and instituted under the Fair Labor Standards Act.

5.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).

6.      Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC.

## II.    PARTIES

7.      Plaintiff, Deborah Linton, ("Plaintiff" or "Linton") is currently a resident of Oletha, Kansas but she performed work for the Defendant in Dothan Alabama, which is located within the Southern District of Alabama.  Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the  Division.

8.      Defendant America's Thrift Stores of Alabama Inc.,  ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts within the State of Alabama that it is subject to service of process in Alabama.

9.      Defendant employed at least fifteen (15) people during the current or preceding calendar year.

10. Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

11. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s).

12. During the three years preceding filing this Complaint, Defendant was an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. 203(s)(1).

13. During the three years preceding filing this Complaint, Defendant has been a company whose employees, including the Plaintiff, are engaged in interstate commerce and whose employees handle and/or work on goods moved in and/or produced in commerce.

14. Defendant's gross annual revenue exceeds $500,000.

15. Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

### III. FACTS

16. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

17. On or about February 5, 2021, Linton began working for America's Thrift Store as a Bagger.

18. Linton is a person with one or more disabilities that substantially limit major life activities.

19. Specifically, Linton is deaf, dyslexic, suffers from migraines, and has no colon.

20. These conditions affect Linton's daily life activities as compared to others as she cannot hear, has trouble communicating, has debilitating migraines which cause her to be unable to work, think, concentrate, has trouble eating and has digestive issues.

21. Linton worked for the Defendant in two different stints.

22. In or about January 2022, Linton resigned from her position due to it being a hostile work environment.

23. In or about August 2022, Linton returned to work for America's Thrift Store in the same position as the person creating the hostile work environment had been let go and was no longer working there.

24. Around the same time Linton came back, her husband started working for the store too.

25. In or about August 2022, Jason Benda became the store manager.

26. Shortly afterwards, Linton reported to Jason Benda and Danielle LNU, the assistant manager, that another employee was stealing things from the store.

27. The worker Linton reported became angry and began to perfume bomb the bins and areas where she worked.

28. As a deaf person, Linton's sense of smell is heightened, and she also gets migraines from strong smells.

29. Linton made complaints about employees spraying her work equipment with perfume, and informed my supervisor that it caused migraines, but it continued to occur throughout her employment.

30. Another coworker, Angelina LNU, who is friends with the worker Linton reported for theft, pointed her middle finger up flipping a bird at Linton and called her a "bitch".

31. Linton reported Angelina LNU's actions to Jason Benda, however, he nothing was done about it.

32. On more than one occasion, after complaining of the perfume bombs, co-workers snuck up behind Linton (who could not hear them) and placed a bin directly behind her causing her to trip and fall.

33. As a result of this "prank", Linton seriously injured her elbow.

34. Linton reported this conduct to Jason Benda, but nothing was done and the perfume bombing continued.

35. On or about May 10, 2023, Linton made a request for accommodation to Jason Benda to have an interpreter sign for her during work meetings.

36. Specifically, Linton asked if her husband could sign, but she was denied this request.

37. Next, Linton asked if her daughter could sign for her, but she was also denied this request.

38. Jason Benda told Linton that no one in her family would be allowed to interpret for her.

39. Jason Benda stated Linton would have a professional interpreter in 48 hours, which did not happen.

40. Linton complained multiple times that she was not given an interpreter.

41. Linton complained so often, she was finally given an interpreter.

42. But the interpreter she was given only lasted for a very short period of time.

43. Linton was never given an alternative to accommodate her for her disability of being deaf.

44. The Defendant did not enter into any interactive process with Linton about the removal of her interpreter or any alternatives to an interpreter.

45. There is a free hotline interpreter so there was no burden on the Defendant.

46. In May of 2023, Mr. Linton spoke up for Linton as she was being mistreated based on her disability.

47. On various occasions throughout her employment, Jason Benda made fun of Linton's disability and laughed at her because of her disability.

48. Jason Benda complained that Linton was too loud.

49. Deaf people speak loudly because they don't realize they are making noise.

50. Jason Benda complained that Linton would scribble on paper to communicate.

51. On or about June 5, 2023, Jason Benda sent Linton home because she was writing on paper to communicate with him.

52. After making the accommodation request and complaining that Linton didn't receive accommodation, Danielle LNU started going into the system and deducting time Linton had worked during lunch hour from her paycheck.

53. Linton could not take lunch because she does not have a colon resulting in digestive issues.

54. Linton requested to not be required to take a lunch hour off due to her lack of colon and digestive issues.

55. Linton complained to Kristie LNU about the fact she does not take lunch due to the fact she does not have a colon.

56. Mr. Linton spoke up for Linton again about how Linton was being mistreated due to her disabilities, and that she could not eat lunch due to her digestive issues.

57. But, Danielle LNU continued to remove time Linton had already worked from her paycheck.

58. Linton was never paid for her work performed during the lunch hour.

59. The Defendant never engaged in the interactive process with Linton about her inability to eat lunch at work.

60. An alternative starting and stopping schedule would have accommodated Linton from having to take an hour lunch break without any burden on the Defendant.

61. In or about June 2023, Linton was moved to a much harder and rigorous position wherein she injured herself and tore her rotator cuff.

62. The Assistant Manager, Danielle, told co-workers Linton was faking her injury.

63. In or about August of 2023, Linton's assistant manager, moved her again away from everyone else, into a secluded corner, in the hottest room in the building.

64. Linton realized she was being cut out of meetings.

65. On or about September 8, 2023, the employer terminated Linton's husband for sticking up for Linton's rights.

66. On or about October 31, 2023, Linton had surgery for her rotator cuff and went on leave.

67. Linton had worked full time for more than a year prior to the surgery and qualified for FMLA.

68. Upon her return from leave, the Defendant returned Linton to work for a couple of days as a greeter in the front of the store.

69. But Linton laughed at her, made fun of her due to her disability, to the point where Linton cried.

70. Linton complained to HR about how she was being treated as a greeter, and they told her when she was done with physical therapy, they would bring her back.

71. The Defendant never brought her back to work.

## IV. CLAIMS

### COUNT I- ADA FAILURE TO ACCOMMODATE

72. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

73. Plaintiff is disabled as she is deaf, dyslexic, suffers from migraines, has no colon, and had a torn rotator cuff.

74. These conditions affect Linton's daily life activities as compared to others as she cannot hear, has trouble communicating, has debilitating migraines which cause her to be unable to work, think, concentrate, has trouble eating, has digestive issues, limited ability to lift, and her range of motion was limited as compared to the general population.

75. Plaintiff required the reasonable accommodation of an interpreter, to be free from an environment of perfume bombs, to be able to work through lunch, and light duty upon her return from surgery.

76. Plaintiff requested that Defendant provide the above-stated reasonable accommodations.

77. Plaintiff was able to perform the essential functions of their job with or without accommodation for their disability as she was performing her job duties and needed the interpreter to communicate during work meetings.

78. Plaintiff was able to perform the essential functions of her job with or without accommodations as she was performing her job duties through lunch and was unable to eat lunch.

79. Plaintiff was able to perform the essential functions of her job with or without accommodations as she was performing her job duties as a greeter.

80. The Defendant either refused to provide the accommodation which were of no burden to the Defendant, or removed the accommodations without reason.

81. The Defendant failed to engage in the interactive process required by the Americans with Disabilities Act even though Plaintiff was able to perform the essential functions of their job.

82. As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## **COUNTII- ADA DISCRIMINATION – TERMINATION**

83. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

84. Plaintiff is disabled as she is deaf, dyslexic, suffers from migraines, and has no colon.

85. These conditions affect Linton's daily life activities as compared to others as she cannot hear, has trouble communicating, has debilitating migraines which cause her to be unable to work, think, concentrate, has trouble eating and has digestive issues and all of these functions are limited compared to the general population.

86. The Defendant knew Plaintiff's disabilities.

87. Plaintiff was able to perform the essential functions of her job with or without accommodation for her disability.

88. At all times relevant to this complaint, Plaintiff performed the essential functions of their job duties as in a satisfactory or better manner.

89. The Defendant sent Plaintiff home while she was undergoing physical therapy after her surgery and never "brought her back" as promised.

90. There is no logical, medical or other basis to believe that Plaintiff's disability would prevent Plaintiff them from performing the essential functions of the job.

91. But for Plaintiff's disability, Defendant would have retained Plaintiff in her position as a Bagger.

92. Defendant violated the ADA by terminating the Plaintiff's employment because of her disability.

93. Because of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## COUNT III– ADA –- RETALIATION

94. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

95. Plaintiff was qualified for their position and able to perform the essential functions of the job.

96. Plaintiff engaged in protected activity each time she requested an accommodation for her disability.

97. Plaintiff's accommodations were either not granted, or eliminated, all while making fun of her for her disability.

98. Plaintiff was made fun of, laughed at, written up for her disability.

99. Plaintiff was tripped by bins placed behind her as a prank based on her disability.

100. Plaintiff was eventually terminated (or at least constructively terminated) as she was never brought back and placed on the schedule.

101. But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as a Bagger.

102. Defendant violated the ADA by engaging in the above-stated retaliatory acts terminating Plaintiff for engaging in protected activity.

103. Because of Defendant's violation of the ADA, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT IV- ADA HOSTILE WORK ENVIRONMENT

104. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

105. Plaintiff was harassed their because of her disabilities of being deaf, having migraines, having to speak to loudly, she was deprived of an interpreter, she was written up for writing to communicate and told she was insubordinate for writing, being tripped by bins as a prank because she couldn't hear them, she was isolated, she was placed in harder positions and having to greet others all due to her disability.

106. Plaintiff was forced to take a lunch break and had time she had worked removed from her paycheck when she couldn't eat due to her disability.

107. The harassment created a hostile work environment for Plaintiff as it brought her to tears, was humiliating, was severe and pervasive, and changed the terms and conditions of her employment.

108. Plaintiff reported the harassing behavior to her supervisors on multiple occasions and nothing was done to remedy the problems she was experiencing at work.

109. The Defendant failed to take prompt remedial action to remedy the harassment.

110. Plaintiff suffered damages because of the hostile work environment including loss of pay, benefits, and mental anguish.

## COUNT V - FMLA RETALIATION

111. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

112. During the 12-month period before surgery for her rotator cuff, Defendant employed Plaintiff for at least 1,250 hours of service.

113. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks within 75 miles of where Plaintiff worked in the current or preceding calendar year before Plaintiff's rotator cuff surgery.

114. Plaintiff took FMLA leave for her rotator cuff surgery.

115. Upon her return from FMLA leave, co-workers made fun of her to the point where she would cry.

116. Defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which he/she needed treatment through theirs doctor.

117. Upon her return from FMLA leave, Defendant sent Plaintiff home and never brought her back to work in whole or in part because of Plaintiff's exercise of FMLA leave.

118. Because of Defendant's retaliatory (constructive) termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT VI- FMLA INTERFERENCE FAILURE TO REINSTATE

119. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

120. During the 12-month period before surgery for her rotator cuff, Defendant employed Plaintiff for at least 1,250 hours of service.

121. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks within 75 miles of where Plaintiff worked in the current or preceding calendar year before Plaintiff's rotator cuff surgery.

122. Plaintiff took FMLA leave for her rotator cuff surgery.

123. Plaintiff provided notice of foreseeable FMLA leave for her surgery.

124. Plaintiff sought to return from theirs leave.

125. Upon theirs return defendant failed or refused to reinstate Linton to her former position.

126. Defendant interfered with Plaintiff's FMLA rights by not allowing her to return to the same or similar position upon theirs return.

127. Because of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has lost pay and continues to be paid less.

128. Defendant's actions in not promoting/hiring Plaintiff violated the FMLA.

## COUNT VII- FLSA- MINIMUM WAGE

129.  During the three years preceding filing this complaint, Defendants failed to pay Plaintiff minimum wage in one or more weeks in which she worked for a fixed hourly rate.

130.  Because of Defendants' willful and intentional violation of the FLSA, Plaintiff has been damaged, suffering loss of the federally mandated minimum wage for all the hours she worked.

131.  Because of Defendant's pay practices, Plaintiff seeks recovery of theirs wages so she be paid the minimum wage for all hours worked.

132.  Plaintiff complained to her supervisor about the improper Defendant's failure to pay overtime/failure to pay minimum wage.

133.   Defendant continued to deduct Plaintiff's paycheck for hours worked and did not reimburse her for hours deducted from her paycheck.

134.  Because of Defendant's willful and intentional violation of the FLSA, Plaintiff has suffered loss of pay, benefits, and other compensatory damages.

## COUNT VIII- WORKERS' COMPENSATION RETALIATORY DISCHARGE

135.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if set forth fully herein.

136.  Defendant and Plaintiff engaged in an employer/employee relationship.

137. Plaintiff suffered an on-the-job injury.

138. Defendant had notice of Plaintiff's on-the-job injury.

139. After surgery for her rotator cuff injury, Defendant sent her home and never brought her back on the schedule effectively terminating her employment.

140. Defendant willfully terminated Plaintiff for suffering an on-the-job injury and exercising of his right to report an injury that qualified herfor workers' compensation benefits in violation of Alabama Code § 25-5-11.1.

141. Plaintiff has been damaged because of Defendant's retaliatory discharge by Defendant, suffering loss of pay and mental anguish.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.  Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the Americans with Disabilities Act;

B.  Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

C. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Fair Labor Standards Act;

D. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

E. Award back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

F. Attorneys' fees and costs;

G. Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

H. Any different or additional relief as determined by the Court to which Plaintiff is entitled.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

*/s/ Patricia A. Gill*
_____
Patricia A. Gill

**OF COUNSEL:**

The Workers' Firm
2 20th Street North, Suite 900
Birmingham, Alabama 35203
T: 205.329-6392
trish@theworkersfirm.com

### PLEASE SERVE DEFENDANT AS FOLLOWS

America's Thrift Stores of Alabama, Inc.
Registered Agent Mac B Graves
569 Brookwood Village
Birmingham AL 35209